# Third District Court of Appeal

## State of Florida

Opinion filed November 4, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1512
Lower Tribunal No. 20-21883
_____


**Miami-Dade County,**
Appellant,

vs.

**Miami Gardens Square One, Inc., et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Abigail Price-Williams, Miami-Dade County Attorney, and David M. Murray and Lauren E. Morse and Angela F. Benjamin, Assistant County Attorneys, for appellant.

Benjamin, Aaronson, Edinger & Patanzo, P.A., and Daniel R. Aaronson and James S. Benjamin (Fort Lauderdale) and Gary S. Edinger (Gainesville), for appellees.


Before FERNANDEZ, HENDON and LOBREE, JJ.

LOBREE, J.

Miami-Dade County (the "County") appeals from the trial court's issuance of a temporary injunction preventing enforcement of curfew provisions in County Emergency Orders ("CO") 27-20 and 30-20, as amended, against Miami Gardens Square One, Inc., d/b/a Tootsie's Cabaret, and its employee Hal Bell, III (collectively "Tootsie's"). The temporary injunction was issued on Tootsie's argument, in part, that the curfew was preempted by Florida Executive Order ("EO") Number 20-244. Because Tootsie's failed to show a substantial likelihood of prevailing on the merits of their preemption claim, we reverse.[1]

Background Facts and Procedural History

In March 2020, the Governor declared a state of emergency due to the spread and harmful effects of the novel coronavirus known as COVID-19. In response to a spike in transmissions, in July the County enacted a series of emergency measures through CO 26-20, 27-20, and 28-20, including a late-night curfew, as well as the complete shutdown of non-essential businesses, including bars and entertainment venues. In September, after a decline in transmission and as part of his three-phase plan for the economic recovery of the state, the Governor issued EO 20-244, announcing the beginning of phase three. Notably, this order's section two forbade local government from enacting COVID-19 emergency measures that "prevent[ed]

---

[1] We decline to address the other issues raised by the parties, which were not reached by the trial court.

2

an individual from working or from operating a business." For its part, and partly in response to EO 20-244, the County then issued CO 30-20, wherein it now "permitted" "[e]very retail and commercial establishment" to "open, and remain open," subject to the requirements specified therein. One of the measures kept in place by CO 30-20, however, was the curfew enacted by CO 27-20, currently running from 12:00 a.m. to 6:00 a.m. and allowing for specified exceptions. CO 30-20 provided that the County curfew was preserved because COVID-19 transmissions continued and remained more likely in the context of late-night gatherings.

On October 9, 2020, Tootsie's filed the underlying suit, raising among several causes of action the claim that EO 20-244 preempted provisions in CO 27-20 and CO 30-20, including the curfew. On October 15, the trial court held a two-hour, non-evidentiary hearing on Tootsie's motion for a temporary injunction targeting the curfew. The following day, the trial court granted the injunction and enjoined the County from enforcing its curfew against Tootsie's. The County appealed. The temporary injunction order was automatically stayed under Florida Rule of Appellate Procedure 9.310(b)(2). But then the trial court granted Tootsie's request to vacate the stay. In a previous order, we reinstated the stay in response to the County's motion. We now address the merits of the County's appeal.

<u>Standard of Review</u>

"The standard of review of trial court orders on requests for temporary injunctions is a hybrid. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review." <u>Quirch Foods LLC v. Broce</u>, No. 3D20-842, 2020 WL 6053263, at *6 (Fla. 3d DCA Oct. 14, 2020) (quoting <u>Fla. High Sch. Athletic Ass'n v. Rosenberg</u>, 117 So. 3d 825, 826 (Fla. 4th DCA 2013)).

<u>Analysis</u>

"To obtain an injunction, the moving party must show '(1) a substantial likelihood of success on the merits, (2) the likelihood of irreparable harm absent the entry of an injunction, (3) a lack of an adequate remedy at law, and (4) that injunctive relief will serve the public interest.'" <u>DeSantis v. Fla. Educ. Ass'n</u>, No. 1D20-2470, 2020 WL 5988207, at *4 (Fla. 1st DCA Oct. 9, 2020) (quoting <u>State, Dep't of Health v. Bayfront HMA Med. Ctr., LLC</u>, 236 So. 3d 466, 472 (Fla. 1st DCA 2018)); <u>City of Miami v. AIRBNB, Inc.</u>, 260 So. 3d 478, 481 (Fla. 3d DCA 2018). Tootsie's argues, and the trial court found, that they showed a substantial likelihood of prevailing on the merits of their preemption claim because EO 20-244 expressly forbids the County from enacting curfews. Alternatively, Tootsie's contends that this order impliedly preempts or conflicts with CO 27-20 and CO 30-20.

4

A preemption challenge is a facial attack on the constitutionality of a legal enactment. Club Madonna, Inc. v. City of Miami Beach, 924 F.3d 1370, 1380 (11th Cir. 2019). A facial constitutional challenge considers only the text of the law, not its application to a particular set of circumstances. Fraternal Order of Police, Miami Lodge 20 v. City of Miami, 243 So. 3d 894, 897 (Fla. 2018). To succeed, "the challenger must demonstrate that no set of circumstances exists in which the [law] can be constitutionally valid." Id. The difficulty of this task is well recognized. Ricketts v. Village of Miami Shores, 232 So. 3d 1095, 1098 (Fla. 3d DCA 2017).

"[T]here are two ways that a county ordinance [or order] can be inconsistent with state law and therefore unconstitutional." Phantom of Brevard, Inc. v. Brevard County, 3 So. 3d 309, 314 (Fla. 2008). "First, a county cannot legislate in a field if the subject area has been preempted to the State." Id. "Second, in a field where both the State and local government can legislate concurrently, a county cannot enact an ordinance [or order] that directly conflicts with a state statute [or order]." Id. Thus, preemption may be either express or implied. Miami-Dade County v. Dade Cty. Police Benevolent Ass'n, 154 So. 3d 373, 379 (Fla. 3d DCA 2014) (citing Sarasota All. for Fair Elections, Inc. v. Browning, 28 So. 3d 880, 886 (Fla. 2010)).

Express Preemption

"Preemption of local ordinances [or orders] by state law may, of course, be accomplished by express preemption—that is, by a . . . provision stating that a

5

particular subject is preempted by state law or that local ordinances [or orders] on a particular subject are precluded." Fla. Retail Fed'n, Inc. v. City of Coral Gables, 282 So. 3d 889, 896 n.12 (Fla. 3d DCA 2019) (quoting Masone v. City of Aventura, 147 So. 3d 492, 495 (Fla. 2014)). "Express preemption requires a specific legislative statement; it cannot be implied or inferred." Browning , 28 So. 3d at 886. "Express preemption of a field . . . must be accomplished by clear language stating that intent." Id.

Preemption analysis is a matter of textual or statutory interpretation. Thus, we must begin our analysis with "the actual language used in the [order] because [the Governor's] intent is determined first and foremost from the . . . text." Williams v. State, 186 So. 3d 989, 991 (Fla. 2016) (quoting Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013)). The language in EO 20-244 relied on by Tootsie's reads as follows:

> Section 2.    Right to Work and Operate a Business
>
> No COVID-19 emergency ordinance may *prevent* an individual from working or from operating a business. This preemption is consistent with Executive Order 20-92.

(emphasis added). The curfew provision at issue in CO 27-20, Amendment Number 3, relevantly reads:

> WHEREAS, a curfew is necessary to safeguard life and health, as parties and gatherings late at night have the potential to spread COVID-19 . . . .

6

1.    Commencing on October 12, 2020 at 12:01 a.m., a curfew is hereby imposed for all of Miami-Dade County . . . effective from 12:00 a.m. each night through 6:00 a.m. the next morning . . . During the period of such curfew, no person shall make use of any street or sidewalk for any purpose, except police, first responder, medical, health care, media, and utility personnel. In addition, the curfew shall not apply to [the following] persons . . . .

The curfew provision in CO 30-20, Amendment Number 1, adds:

3. c.   Restaurants and other food service establishments with seating for more than eight people shall close for on-premises dining between the start of the curfew as determined in Emergency Order 27-20 and 6:00 am the next morning. Notwithstanding the foregoing, such establishments may operate their kitchens for the purpose of providing delivery services, pick-up or take out services. Employees, janitorial personnel, contractors and delivery personnel shall be allowed access to such establishments at all times. All other businesses and establishments, except for those exempted from the curfew, shall abide by the curfew.

We first note that EO 20-244 does not expressly address curfews or emergency COVID-19 measures in general. Instead, the order states that, among the COVID-19 emergency measures that local governments may enact, none may "prevent an individual from working or from operating a business."

Tootsie's is correct that the provision's prohibition intends to be preemptive. However, the narrow issue here is whether the County's curfew falls within the realm of emergency measures forbidden. Because the class of measures forbidden are those that "prevent an individual from working or from operating a business,"

we find the meaning of "prevent" dispositive. Unless this is what the curfew at issue does, the meanings of "working" and "operating" play no significant role in our analysis. Cf. De Soleil S. Beach Residential Condo. Ass'n, Inc. v. De Soleil S. Beach Ass'n, Inc., 45 Fla. L. Weekly D115, D115 (Fla. 3d DCA Jan. 15, 2020) (where clause authorized suit for collection of assessments, meaning of "collection," not "assessments," was dispositive).

"[T]his Court looks first to the plain and obvious meaning of the statute's text, which a court may discern from a dictionary." W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 9 (Fla. 2012). "In determining the 'plain and obvious' meaning of an overall [law], it is not always sufficient to examine only the first definition of the individual statutory words in the dictionary." State v. Brigham, 694 So. 2d 793, 797 (Fla. 2d DCA 1997). To "prevent" is defined as "[t]o keep from happening," to "impede," and altogether "stopping . . . an action." *Prevent*, American Heritage Dictionary (2d ed. 1985). Tootsie's argues that, since a curfew stops and impedes business operations involving serving the pubic while it is in effect, it is a measure preventive of work and operations under the order. This position is supported by the secondary meanings of "prevent." Id. (also defining "to prevent" as "[t]o present an obstacle" or merely "hindering an action"). The County responds that "[a] restaurant that is prevented from operating is one that is closed at all hours," not one allowed to operate but that may be economically affected by a temporary curfew. Because

8

the dispositive word here is "susceptible to more than one interpretation" and "reasonable persons can find different meanings in [it]," State v. Huggins, 802 So. 2d 276, 277 (Fla. 2001), we find section two of EO 20-244 to be ambiguous.[2]

"If . . . an ambiguity exists," courts "should look to the rules of statutory construction." See, 79 So. 3d at 9. A primary textual canon requires us to consider the entirety of the written enactment, including its prefatory components. Great Am. Indem. Co. v. Williams, 85 So. 2d 619, 623 (Fla. 1956) (whole text canon); Dep't of State v. Fla. Greyhound Ass'n, Inc., 253 So. 3d 513, 521 (Fla. 2018) (prefatory materials canon). The parties agree that the executive order's preamble is important in construing section two. EO 20-244 relevantly reads:

> **WHEREAS**, the State of Florida has suffered economic harm as a result of COVID-19-related *closures* exacerbating the impacts of the State of Emergency, and Floridians should not be *prohibited* by local governments from working or operating a business.

(emphasis in italics added). The first of the two conjoined clauses suggests that the kind of "prevention" of work or operations forbidden by the order is one which

---

[2] Ambiguity is often inherent to the word "prevent" in various contexts. See, e.g., State v. Lam, 29 P.3d 1206, 1209-10 (Or. Ct. App. 2001) (meanings of "to hold or keep back" and "an insurmountable obstacle or impediment" conflicted with that of "[to] forestall, which means 'to intercept or stop something in its course'"); Am. Innotek, Inc. v. United States, 126 Fed. Cl. 468, 477 (U.S. Ct. Fed. Claims 2016) (discussing how competing meanings of "prevent" as either absolutely stopping something from happening, or merely reducing it while taking place, created ambiguity).

results in business *closures*, while the second clause further explains that the closures in mind are those specifically resulting from local government's *prohibitions* of work or business operations.  Cf. State v. Lauriston, 295 So. 3d 281, 284 (Fla. 4th DCA 2020) (nearest reasonable referent canon).

While the potential opposite meanings of "closure" reproduce the same ambiguity of the word "prevent," see *Closure*, American Heritage Dictionary (2d ed. 1985) ("[t]he act of closing or the condition of being closed"), the ordinary meaning of "to prohibit" is *unambiguously* "to forbid by authority." *Prohibit*, American Heritage Dictionary (2d ed. 1985); see also 730 Bienville Partners, Ltd. v. Assurance Co. of Am., 67 F. App'x 248, 248 (5th Cir. 2003) ("to prohibit" means "to forbid by authority," not more broadly to "hinder"); Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP v. Nat'l Fire Ins. Co. of Hartford, No. 06-770, 2007 WL 2489711, *6 (M.D. La. Aug. 29, 2007) ("'Prohibited,' . . . means more than mere hampering or limitation, it means to 'formally forbid' or 'prevent.'").  The preamble, therefore, suggests that what the Governor meant by emergency measures that "prevent an individual from working or from operating a business" under section two were enactments of law that expressly prohibited and altogether closed businesses down.

This reading is supported by the prior executive orders that EO 20-244 expressly superseded, which provide further context for section two.  See Fla. Dep't

10

of Env't Prot. v. ContractPoint Fla. Parks, LLC, 986 So. 2d 1260, 1265 (Fla. 2008) (texts are to be read in context). EO 20-123, for example, required the reopening of certain types of business not yet open, including gyms, museums, and sports venues. Specifically, the order authorized professional sports venues to host events, expressly preempting any local rule "*prohibiting* a professional sports team conducting, or the *operations* of the venue from hosting, those sports activities. . . ." (emphasis added). Since EO 20-244, initiating phase three of the Governor's recovery plan, follows EO 20-123 in tandem and purports to use identical language, we must construe them in harmony. See R.N. v. State, 257 So. 3d 507, 510 (Fla. 4th DCA 2018) (presumption of consistent usage canon).

Because EO 20-244 aims to preempt only those COVID-19 emergency measures enacted by local government that "prevent an individual from working or from operating a business" by prohibiting either or shutting down a business altogether, the County's curfew, which concededly allows Tootsie's to operate from six a.m. to midnight daily, does not fall within this express limitation.[3] Compare

---

[3] Tootsie's interpretation is particularly inconsistent. On the one hand, they propose that although EO 20-244 takes away the power of *all* local government from enacting *any* COVID-19 emergency measures (except with regard to restaurant occupancy), it nevertheless allows local government to regulate businesses with regard to the use of masks and social distancing. On the other hand, while recognizing that their challenge is a facial one where individualized circumstances are irrelevant, Tootsie's nevertheless relies on the alleged unique effects of the curfew on their employees and business model when arguing whether their work or business operations are being "prevented." Because "part[ies] taking . . . inconsistent positions will not be

11

*Curfew*, American Heritage Dictionary (2d ed. 1985) ("An order . . . enjoining specified classes of the population to retire from the streets at a prescribed hour"), with *Moratorium*, American Heritage Dictionary (2d ed. 1985) ("A suspension of action"); see also *Curfew*, Ballentine's Law Dictionary (3d ed. 1969) ("A fixed point of time in the evening, after which persons not having duties to perform on the streets, particularly children, shall not be abroad."). Had the Governor meant to preempt local governments from imposing curfews, he could have said so. Accordingly, Tootsie's failed to show that section two of EO 20-244 *clearly* and *expressly* preempted the County's curfew.

Implied Preemption or Conflict

Alternatively, Tootsie's argues that EO 20-244, issued pursuant to Chapter 252, Florida Statutes (2020), impliedly preempted "the entire field of regulation" of COVID-19 emergency measures, precluding all counties and municipalities from "address[ing] the COVID pandemic as each saw fit" and preempting "all such local orders." "Implied preemption should be found to exist only in cases where the legislative scheme is *so pervasive* as to evidence an intent to preempt the *particular area*, and where *strong public policy* reasons exist for finding such an area to be

---

allowed to have [their] cake and eat it too,'" State Farm Mut. Auto. Ins. Co. v. Smalley Transp. Co., 696 So. 2d 522, 523 (Fla. 3d DCA 1997) (quoting Salcedo v. Asociacion Cubana, Inc., 368 So. 2d 1337, 1339 (Fla. 3d DCA 1979)), these inconsistencies are fatal to their position.

preempted by the Legislature." See GLA & Assocs., Inc. v. City of Boca Raton, 855 So. 2d 278, 282 (Fla. 4th DCA 2003) (quoting Tallahassee Mem'l Reg'l Med. Ctr., Inc. v. Tallahassee Med. Ctr., Inc., 681 So. 2d 826, 831 (Fla. 1st DCA 1996)) (emphasis added). Generally, "an interpretation of state statutes [or orders] which would impede the ability of local government to protect the health and welfare of its citizens should be *rejected* unless the Legislature [or Governor] has *clearly expressed* the intent to limit or constrain local government action." M & H Profit, Inc. v. City of Panama City, 28 So. 3d 71, 77 (Fla. 1st DCA 2009) (emphasis added).

"[U]nder article VIII, section 1(g) of the Florida Constitution, chartered counties have the broad authority to 'enact county ordinances not inconsistent with general law.'" Dade Cty. Police Benevolent Ass'n, 154 So. 3d at 378. Chapter 252, from which the Governor's own enumerated and delegated emergency powers derive, see Abramson v. DeSantis, No. SC20-646, 2020 WL 3464376, at *1 (Fla. June 25, 2020), equally "confer[s] upon . . . the governing body of each political subdivision of the state the emergency powers provided herein." § 252.32(1)(b), Fla. Stat. (2020); see also § 252.38(1), Fla. Stat. (2020) ("Safeguarding the life and property of its citizens is an innate responsibility of the governing body of each political subdivision of the state.").[4] Thus, counties and municipalities are ordinarily

---

[4] See also Art. VIII, §6 (a) and (e), n. 3, Fla. Const., retaining Art. VIII, § 11(1)(b), Fla. Const. (1885) (Miami-Dade County, pursuant to home rule charter, "may pass ordinances relating to the affairs, property and government of Dade County and

13

understood to have police powers that include the enactment of curfews. See Mun. Court, City of Ft. Lauderdale v. Patrick, 254 So. 2d 193, 195 (Fla. 1971) (placing limitations on their delegation to mayor). Accordingly, "[i]mplied constraints within these particular areas should be even more carefully scrutinized." M & H Profit, Inc., 28 So. 3d at 77.

Nothing in the language of EO 20-244's section two suggests that the Governor has preempted the entire field of COVID-19 emergency measures. Its plain language preempts *only one* class of local COVID-19 emergency measures (i.e., those that "prevent an individual from working or from operating a business"), leaving intact the authority to enact other such measures. Neither does the rest of EO 20-244, including sections three and four, show an intent to preempt the field, but instead to impose *restrictions* on the existing power of local governments to enact COVID-19 emergency measures in the context of restaurant occupancy limitations and the collection of fines.

Additionally, as in Dade County Police Benevolent Ass'n, 154 So. 3d at 380, "we agree that '[i]t generally serves no useful public policy to prohibit local government from deciding local issues.'" (quoting Browning, 28 So. 3d at 887).

---

provide suitable penalties for the violation thereof; . . . , and to do everything necessary to carry on a central metropolitan government in Dade County."); Art. 1, § 1.01 (A) 22 & 23, Miami-Dade County Home Rule Charter; § 8B-7(2)(e) and (f), Miami-Dade County Code.

This is particularly obvious where no useful public policy is advanced by construing the executive order's narrow language as precluding *all* local government from enacting *any* further emergency measures in discharging its innate responsibility of safeguarding the life and property of its citizens during the sort of natural emergency contemplated by chapter 252. See Abramson, 2020 WL 3464376, at *1; cf. Dade Cty. Police Benevolent Ass'n, 154 So. 3d at 380 (concluding legislature did not clearly preempt local regulation "so as to invoke the 'severely and strongly disfavored doctrine of implied preemption'") (quoting Exile v. Miami-Dade County, 35 So. 3d 118, 119 (Fla. 3d DCA 2010)).  Constrained by the text and legal authorities under consideration, it is not our function to address the wisdom of either the state or local government's emergency measures at issue here.  See Fla. Educ. Ass'n, 2020 WL 5988207, at *6 ("Nor can the court determine whether the Governor . . . , through [his] delegated emergency authority, met the executive's statutory obligation to address the natural emergency presented by the pandemic.").  Neither do we find conflict between EO 20-244 and COs 27-20 and 30-20, as amended. Dade Cty. Police Benevolent Ass'n, 154 So. 3d at 380 ("[A] conflict between an ordinance and statute will not be found where the ordinance and the statute can coexist such that compliance with one does not require violation of the other.").

15

Conclusion

"A plaintiff can show a substantial likelihood of success 'if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced.'" Fla. Educ. Ass'n, 2020 WL 5988207, at *4 (quoting City of Jacksonville v. Naegele Outdoor Advert. Co., 634 So. 2d 750, 753 (Fla. 1st DCA 1994)). EO 20-244 does not expressly preempt curfews by local government. Neither implied preemption nor conflict precluded the County's curfew orders. Accordingly, Tootsie's failed to meet their burden to show a likelihood of success on the merits of their preemption claim. For these reasons, we reverse the order of the trial court and vacate the temporary injunction entered against the County.

Reversed and Vacated.